*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* KING, Minors.

UNPUBLISHED
July 23, 2026
2:43 PM

No. 378518
Lenawee Circuit Court
Family Division
LC No. 24-000177-NA

Before: MARIANI, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor children, LPK, LJK, and NMK, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

In November 2024, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court exercise jurisdiction over the children and remove them from the care of respondent and the children's father.[1] DHHS alleged physical neglect and abuse of the children, domestic violence between respondent and the children's father in the children's presence, and inadequate housing and employment. According to DHHS, respondent had been engaging in services since July 2023, with little to no success. After the petition was filed, the children were found living in a tent in their paternal grandmother's backyard, with no shoes, socks, or coats worn in 38-degree weather. At DHHS's request, the trial court entered an ex parte order

---

[1] The children's father was a respondent throughout the proceedings, and his son (the children's older half-brother), DMK, was also named in the petition. Neither the children's father nor DMK is involved in this appeal.

removing the children and their father's older child, DMK, from respondent's and their father's care.[2]

At the preliminary hearing, respondent pleaded no contest to the allegations in the petition and to jurisdiction, and the court thereafter authorized the petition and assumed jurisdiction over the children. Due to their continued domestic-violence issues, the court entered a no-contact order between respondent and the children's father. At a December 2024 initial dispositional hearing, the court adopted the case service plan (CSP) provided by DHHS, which required respondent to complete a psychological evaluation and participate and all recommended counseling and treatments; complete parenting-education classes; complete services to address her issues with domestic violence; and obtain and maintain stable housing and employment.

Based on the information it had received from foster care workers and the children's relative placement, the trial court described the children as "feral" and as having "uncontrollable behavior" when they entered care. They ate with their hands and did not know how to use silverware. They also did not understand how to use a bathroom, were not accustomed to bathing or brushing their teeth on a regular basis, and had extreme dental decay from lack of dental care. LPK exhibited extremely aggressive and violent behaviors throughout the proceedings, and he often hurt or attempted to hurt his siblings during and after parenting times with respondent. During parenting times, the children would bite, kick, and spit on foster care staff, and respondent was unable to manage all three children or control their behavior. The children eventually participated in trauma assessments, which indicated that they all had trauma and significant emotional and behavioral needs and recommended that respondent participate in specialized trauma-based parenting education to address the impact that trauma had, and would continue to have, on the children's development and behavior. Foster care workers repeatedly expressed concern that respondent could not safely manage the children when together, and they eventually split respondent's parenting time so that she had separate parenting times with LPK, as he had the most significant behavioral issues. Respondent's parenting during parenting times initially improved under this new arrangement, particularly with LJK and NMK, but she subsequently regressed and again struggled to safely and appropriately parent the children.

In January 2025, respondent's supervised parenting time was suspended after LPK repeatedly alleged respondent pinched him multiple times on his arm during a parenting time. After Child Protective Services (CPS) declined to substantiate the allegation, respondent's parenting time resumed in May 2025. In June 2025, respondent's parenting time was again suspended after LPK alleged that respondent sexually abused him during a therapy session. CPS later determined "no preponderance" of evidence substantiated those allegations, and the prosecution refused to pursue any criminal charges against respondent. LPK, however, continued to report the same allegations of sexual abuse throughout the remainder of the proceedings.

In October 2025, DHHS filed a supplemental petition to terminate respondent's parental rights based on respondent's failure to participate in or demonstrate benefit from services offered

---

[2] The children were placed with their maternal great-uncle and his girlfriend, where they remained throughout the entirety of the proceedings.

to address the issues that brought the children into care. DHHS alleged that respondent's issues with her mental health, domestic violence, parenting ability, and appropriate housing and employment still existed, and given her lack of progress in rectifying these issues, the children would face a substantial risk of harm if returned to her care. Following a termination hearing, at which all parties presented documentary evidence and witness testimony, the trial court found that clear and convincing evidence established grounds for termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j), and that a preponderance of the evidence established that termination was in the children's best interests. The trial court thereafter issued an order terminating respondent's parental rights as previously described. This appeal followed.

## II. DISCUSSION

On appeal, respondent argues that the trial court reversibly erred by terminating her parental rights because the trial court improperly relied on inadmissible hearsay evidence when doing so. Respondent also challenges the trial court's findings regarding MCL 712A.19b(3)(c)(*i*) and (j) as statutory bases for termination of her parental rights, and the court's finding that termination was in the children's best interests.

### A. PRESERVATION AND STANDARDS OF REVIEW

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 629; 853 NW2d 459 (2014). A trial court abuses its discretion when it renders a decision outside the range of reasonable and principled outcomes, which necessarily occurs when it makes an error of law. *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024). The admissibility of evidence involves a preliminary question of law that we review de novo. *Brown/Kindle/Muhammad*, 305 Mich App at 629-630. We also review de novo a trial court's application and interpretation of relevant court rules and statutes. *In re DMK*, 289 Mich App 246, 253; 796 NW2d 129 (2010).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "We review for clear error both the trial court's decision that a statutory ground for termination has been established and the court's decision regarding the child's best interests." *In re Simpson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368248); slip op at 3. Statutory grounds for termination must be found by clear and convincing evidence, and termination must be found to be in the child's best interests by a preponderance of the evidence. *Id*. at __; slip op at 3. We give deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).

### B. NEW OR DIFFERENT GROUNDS FOR TERMINATION

Respondent argues that the trial court reversibly erred by admitting hearsay evidence regarding LPK's claims of respondent pinching him during a parenting-time visitation and his subsequent allegations that respondent sexually abused him. According to respondent, the trial

court violated MCR 3.977(F)(1) by doing so because the court relied on that evidence as a basis for termination, but the evidence was not "legally admissible evidence" that could have supported termination.

In general, "[t]he Michigan Rules of Evidence do not apply at" a termination hearing and, instead, "all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value." MCR 3.977(H)(2). There are exceptions to this general rule, however. As relevant here, if "termination is sought on the basis of grounds new or different from those that led the court to assert jurisdiction over the children, the grounds for termination must be established by legally admissible evidence." *In re Jenks*, 281 Mich App 514, 516; 760 NW2d 297 (2008), citing MCR 3.977(F)(1)(b). A ground for termination is new or different when it is "unrelated to the basis on which the . . . court initially established its jurisdiction over the children[.]" *In re Snyder*, 223 Mich App 85, 90; 566 NW2d 18 (1997).

Here, the trial court exercised jurisdiction after respondent pleaded no contest to the allegations in the petition, which included allegations of physical neglect and abuse of the children, domestic violence between respondent and the children's father in front of the children, and inadequate housing and employment. As a result, "all relevant and material evidence" related to those grounds could be considered by the court at the termination hearing, regardless of whether it would otherwise be admissible under the rules of evidence. MCR 3.977(H)(2).

In its supplemental petition, DHHS sought termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (j) on the grounds that respondent had minimally participated in and demonstrated no benefit from her CSP, which was meant to address her issues with domestic violence, housing, employment, and the ability to safely and appropriately care for the children, and that those persisting issues presented a significant risk of harm to the children's health and well-being if they returned to her care. These were not new or different conditions than what was alleged in the original petition, which served as a factual basis for respondent's no-contest plea to the court's assumption of jurisdiction. Indeed, as explained more thoroughly below, the trial court relied on these allegations to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

We disagree with respondent that LPK's allegation of physical abuse amounted to a new or different basis for termination under MCR 3.977(F)(1)(b). LPK's allegation that respondent pinched him during parenting time—which was not expressly mentioned in the supplemental petition but was briefly mentioned by the parties and the trial court during the termination hearing—was related to DHHS's original allegations of domestic violence and respondent's ability to safely and appropriately care for the children, as well as to DHHS's allegation that respondent had failed to participate in or benefit from services offered to rectify those issues. Because legally admissible evidence regarding those grounds had already been introduced at adjudication, the court was permitted to receive and consider related hearsay evidence at the termination hearing. See MCR 3.977(H)(2); *Snyder*, 223 Mich App at 89-90.

LPK's sexual-abuse allegations, however, present a closer question. Because those allegations were not related to the court's original exercise of jurisdiction, legally admissible evidence would be required to prove them as a new ground for termination. See MCR 3.977(F)(1)(b); *Jenks*, 281 Mich App at 516. It is clear from the substance of the supplemental

petition and the parties' arguments at the termination hearing, however, that DHHS was not seeking to present the sexual abuse as a new ground for termination. DHHS made only a general and passing reference to the sexual-abuse allegations and did so only to explain why respondent's parenting time had been suspended a second time. Nonetheless, the trial court did reference LPK's allegations of sexual abuse when discussing the potential risk of harm posed to the children if returned to respondent's care as it related to MCL 712A.19b(3)(j)—indicating that the court considered those allegations in connection with that statutory ground for termination.

To the extent, however, that the court erroneously relied on inadmissible hearsay evidence regarding the sexual-abuse allegations when making its findings under MCL 712A.19b(3)(j), any such error was harmless. The court did not rely on those allegations when it found that clear and convincing evidence established grounds for termination of respondents' parental rights under MCL 712A.19b(3)(c)(*i*) and, as explained more thoroughly below, the court did not err in making that finding. See *Snyder*, 223 Mich App at 91-93; see also *In re Powers*, 244 Mich App 111, 118; 624 NW2d 472 (2000) (explaining that a trial court's erroneous termination under a statutory ground for termination is harmless if at least one other statutory ground is proven by clear and convincing evidence).

## C. STATUTORY GROUNDS FOR TERMINATION

Respondent next argues that the trial court clearly erred by finding that clear and convincing evidence supported termination of her parental rights under at least one of the cited statutory provisions. We disagree.

One statutory ground for termination cited by the trial court in this case was MCL 712A.19b(3)(c)(*i*). A court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds by clear and convincing evidence that "after 182 days have elapsed, the conditions resulting in adjudication remain present and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." *In re MJC*, 349 Mich App 42, 51; 27 NW3d 122 (2023) (quotation marks and citation omitted). What constitutes a "reasonable time" requires consideration of how long the parent will take to improve the conditions and how long the child can wait for the improvements to occur. See *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991). "Even if conditions improved in the months before the termination hearing, a trial court may look to the totality of the evidence to determine whether a parent accomplished meaningful change in the conditions that led to adjudication." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 334; 985 NW2d 912 (2022).

In this case, more than 182 days elapsed between the issuance of the initial dispositional order in December 2024 and the issuance of the termination order in November 2025. See MCL 712A.19b(3)(c)(*i*). The conditions that led to adjudication were domestic violence, physical neglect and abuse, and inadequate housing and employment. Based on the totality of the evidence before the trial court at the time of termination, we see no reversible error in the court's conclusion that these conditions continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages.

The record evidence supported the trial court's finding that respondent failed to rectify her barriers to reunification. Respondent's caseworker and foster care supervisor both testified that

respondent participated in some of the services offered to her—including completing a psychological evaluation, a parenting education course, a family assistance program, and some individual counseling—but she failed to consistently participate in recommended services or show meaningful progress, and she remained unable to safely and adequately care for the children if returned to her. Both witnesses testified that respondent, despite having completed some parenting education classes, had demonstrated minimal improvement in her ability to manage all three children at once or parent them appropriately. Respondent never progressed beyond supervised parenting time, and the children received separate parenting time with respondent in an effort to make it easier for respondent to manage them. Despite this, respondent demonstrated minimal improvement, and parenting time was suspended twice throughout the proceedings due to concerns regarding the children's safety and respondent's ability to safely and appropriately parent them. The caseworker and supervisor also testified that respondent never took accountability for her role in the children's removal, even after DHHS sought termination, and respondent's testimony at the termination hearing reflected as much.

Regarding respondent's housing and employment, testimony established that respondent failed to obtain or maintain either. Witness testimony established that respondent alternated between staying with various friends and living in a shelter. Respondent was living at the shelter at the time of the termination hearing, which was an appropriate temporary home for her at that time, but it was not available as a long-term housing solution for both her and the children. The caseworker testified that respondent received approximately $800 per month in disability benefits, which was a legal source of income and seemingly enough for respondent to support herself, but it was not enough for her to also support the children. Respondent also provided the caseworker with proof that she was employed at both Door Dash and Dollar General, but respondent only worked briefly at each before quitting and spent the majority of the proceedings looking for employment. At the time of the termination hearing, respondent was unemployed and, according to her, still seeking employment.

Regarding respondent's issues with domestic violence, the caseworker and supervisor testified that domestic violence was one of the primary concerns throughout the proceedings, but that respondent minimally participated in domestic-violence services and never sufficiently addressed the issue. The caseworker and supervisor testified that respondent did not begin consistently participating in domestic-violence counseling or services until a few months before the termination hearing. The supervisor testified that respondent only attended individual counseling—which was deemed a crucial service for respondent to address her domestic-violence issues—from February to May 2025, and she was discharged in July 2025 for nonparticipation. And respondent, when asked about why she did not attend her scheduled therapy sessions, testified that she "just didn't go to them."

Testimony throughout the proceedings also established that respondent minimized her domestic-violence issues and the impact they had on the children. Respondent admitted at the termination hearing that she was both a victim and perpetrator of domestic violence and that domestic violence was a condition that led to the children's removal, and the record showed that she was criminally charged with domestic-violence offenses more than once for her part in domestic disputes. Respondent's psychological evaluation, however, indicated that she denied any instances of or issues with domestic violence with the children's father, and even after respondent acknowledged domestic violence as an issue at the termination hearing, she continued to place the

blame on others. Testimony from the caseworker and respondent also established that respondent seemingly grasped that exposing the children to domestic violence had, and would continue to have, a negative effect on them, but that respondent did not know how to address or manage the traumatic effects domestic violence had had on the children. And although respondent testified that she would not maintain a relationship with the children's father in the future, the caseworker testified that there were serious concerns that respondent would do so given her repeated decisions to speak to and engage with the children's father throughout the proceedings.

The record also supported the trial court's finding that there was no reasonable likelihood that respondent would rectify these conditions within a reasonable time considering the children's ages. See MCL 712A.19b(3)(c)(*i*). As discussed, respondent did not meaningfully participate in or demonstrate any benefit from the services offered to address the issues that brought the children into care during the pendency of this case. Respondent had no long-term housing option appropriate for the children, and there was no evidence suggesting that this would change anytime soon. Although respondent participated in and completed some parenting education courses, she still had not demonstrated that she could safely and appropriately parent all three children at once, and the caseworker testified that she continued to have significant safety concerns regarding respondent's ability to parent to children even after the children's parenting times with respondent were split. Additionally, respondent did not consistently participate in, let alone complete, the individual therapy or domestic-violence services provided to her, which were considered critical services to rectifying her primary barriers to reunification.

In sum, the totality of the record before the trial court supported its conclusion that clear and convincing evidence demonstrated that respondent had not "accomplished meaningful change in the conditions that led to adjudication" and that there was no reasonable likelihood that she would rectify those conditions within a reasonable time given the children's ages. See *Jackisch/Stamm-Jackisch*, 340 Mich App at 334; MCL 712A.19b(3)(c)(*i*). Respondent has failed to show that the trial court reversibly erred in reaching this conclusion.[3]

## D. BEST-INTERESTS DETERMINATION

Finally, respondent argues that the trial court erred by finding that termination of her parental rights was in the children's best interests. We disagree.

When determining whether termination is in a child's best interests, the court should place its "focus on the child rather than the parent." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020). "The trial court should weigh all the evidence available to determine the child's best interests," and it should consider a variety of factors, including "the child's bond to the parent; the parent's parenting ability; the child's need for permanency, stability, and finality; and the advantages of a foster home over the parent's home." *Simpson*, ___ Mich App at ___; slip op at 5 (cleaned up). "Other factors that the court may consider include the parent's history, the parent's

---

[3] Given our conclusions regarding this statutory ground for termination, we need not address the trial court's findings under MCL 712A.19b(3)(j). See *Jackisch/Stamm-Jackisch*, 340 Mich App at 333-334.

psychological evaluation, the age of the child, and a parent's substance-abuse history." *MJC*, 349 Mich App at 62 (citations omitted). The court may also consider the parent's ability to provide the child a safe and permanent home, "the parent's compliance with his or her [CSP], the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption," *id*. (cleaned up), as well as "how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all," *In re CJM*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367565); slip op at 4 (quotation marks and citation omitted). The court must also expressly consider a child's placement with a relative, which ordinarily weighs against termination. *Id*. at ___; slip op at 4. When more than one child is involved in the proceedings, the court must consider each child's best interests individually, but it need not make "redundant factual findings" as to matters for which the children's best interests are the same. *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014).

Based on the record before us, we see no reversible error in the trial court's best-interests determination. As discussed, respondents minimally participated in the services offered through her CSP, and she did not demonstrate meaningful benefit from the services in which she did participate. See *MJC*, 349 Mich App at 62. During parenting times, respondent could not appropriately parent the children, together or separately, and she was unable to handle LPK's violent outbursts, which put the other children at risk. Nor did she engage with any of the resources provided in the trauma assessments to learn how to address these issues. Although respondent engaged with the children during parenting time, her ability to do so safely and appropriately remained a significant concern throughout the case, and her parenting time was suspended twice as a result of those concerns. The record also reflected that all three children displayed negative emotions and behaviors after parenting times with respondent; in particular, LPK would become very destructive and would often harm or attempt to harm LJK and NMK. According to the caseworker and the children's relative placement, the children's negative behavior improved dramatically after each time respondent's parenting time was suspended. The caseworker also testified that the children's bond with respondent appeared to be trauma-based; meanwhile, the children appeared to have a very strong bond with their relative placement, who provided for all of the children's extensive needs and expressed an interest in adopting all three of them.[4]

In sum, the record reflects that the trial court properly weighed all the evidence available to it at the time that it made its best-interests determination, *Simpson*, ___ Mich App at ___; slip op at 5, and we see no clear error in its findings, *id*. at ___; slip op at 3.

---

[4] Although respondent does not raise any challenge to this effect on appeal, we note that the trial court's best-interests determination reflects due consideration of the children's relative placement as weighing against termination, see *CJM*, ___ Mich App at ___; slip op at 4, and also, more generally, of each child's best interests individually, see *White*, 303 Mich App at 715-716.

Affirmed.

/s/ Philip P. Mariani
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace